562 So.2d 726 (1990)
LIFE CONCEPTS, INC., et al., Appellants,
v.
David HARDEN, et al., Appellees.
No. 89-847.
District Court of Appeal of Florida, Fifth District.
April 26, 1990.
Rehearing Denied June 20, 1990.
John W. Foster and Paul L. SanGiovanni of Baker & Hostetler, Orlando, for appellants.
Frederic B. O'Neal, Orlando, for appellees.
GOSHORN, Judge.
In this case, the trial court entered a summary judgment finding that section 7.3(9)(c)(1) of the City of Apopka Zoning Code is unconstitutionally vague and therefore unenforceable. Because we find that the operative language has a plain and ordinary meaning which can be readily understood, we reverse.
In 1980, the Florida Legislature amended Chapter 163, Florida Statutes, mandating that local governments amend the housing element in their respective Comprehensive Plans to provide for group home and foster care facilities. Ch. 80-154, § 1, Laws of Fla. (now codified at § 163.3177(6)(f)4, Florida Statutes (1989)). In accordance with this legislative mandate, the City of Apopka amended its Comprehensive Plan on September 18, 1985 to provide for group home facilities. Specifically, Section 4.1.8 of the Comprehensive Plan provides as follows:
4.1.8 Group Homes; Foster Houses; Foster Care Facilities and Adult congregate Living Facilities are to be allowed in all residential zones within the City limits as a special exception only. The reasons for requiring the uses as a special exception are, first, to avoid a concentration of these type of facilities in a single area or type of neighborhood, which would stress the capacity of the area or neighborhood to accommodate such facilities. Second, a special exception is required to avoid an overconcentration of these facilities which would inadvertently recreate an institutional setting. Third, a special exception is required to insure that such facilities are adequately prepared to be used for a group home, foster home, or congregate living facility and that they are properly licensed by the Florida State Department of Health and Rehabilitative Services (HRS). Finally, a special exception is to be required to insure that group, foster, or congregate living facilities are compatible with the neighborhood *727 or area in terms of size of facility and number of persons.

Section 4.1.8, Comprehensive Plan of the City of Apopka, (1985) (Emphasis added). In order to provide guidelines, definitions, standards and criteria for the implementation of the Comprehensive Plan, the City adopted Section 7.3(9) of the Zoning Code of the City of Apopka on April 1, 1986. The ordinance sets out guidelines and criteria which must be complied with by an applicant in order for the applicant to be granted a permit for the establishment of a group home.
In pertinent part, section 7.3(9) provides:
(c.) Occupancy
(1.) Number of Occupants. The maximum number of occupants to reside in the facility shall be compatible with the surrounding residential uses; however, this requirement shall not be deemed to prohibit a maximum number of occupants greater than what would ordinarily constitute a nuclear family.
The facts are not in dispute. Life Concepts, Inc. was founded in 1980, with a grant from the State of Florida and the Department of Health and Rehabilitative Services, in order to provide residential habilitative and therapeutic services to developmentally disabled children and adults. In 1986, Life Concepts, Inc. entered into a contract to purchase certain property owned by Joan W. Byrd as Personal Representative for the Estate of Helen M. Wilde. Life Concepts wanted to develop a group home facility to house physically handicapped and mentally retarded adults displaying various degrees of disabilities and two staff members.
Because the facility would constitute a "group home" as that term is defined in the City of Apopka's Comprehensive Plan, Life Concepts applied for the required special exception. On April 21, 1987, after notice was provided to the appropriate property owners and citizens of the City, the City's Board of Zoning Adjustment conducted a hearing regarding Life Concept, Inc.'s application. At the conclusion of the public hearing, the Board of Zoning Adjustment found that the granting of Life Concept's special exception for the operation of a group home for 12 residents would not adversely affect the public interest. The Board specifically heard evidence that 12 residents would be compatible with the surrounding residential uses, that the handicapped occupants would have substantially less impact on the neighborhood because of their inability to be active and that 12 residents would be required in order to receive HUD funding for the residents' special training. The Board of Zoning Adjustment unanimously voted to recommend approval of the special exception.
On or about May 19, 1987, appellees David Harden and Mary Lee Welch submitted a letter to the Mayor and City Council appealing the decision of the Apopka Zoning Board of Adjustment. After notice to the appropriate property owners and citizens of the City of Apopka, the Apopka City Council heard the appeal and reviewed the Board of Zoning Adjustment's decision. The Apopka City Council then unanimously voted to uphold the decision of the Zoning Board of Adjustment.
Subsequently, appellees, David Harden, Herbert J. Leudenburg, Mary Lee Welch, Darrell H. Beaver and Ruth Beaver, instituted an action for declaratory judgment seeking, inter alia, to have the subject ordinance declared unconstitutionally void for vagueness. The appellees moved for summary judgment. The court granted the appellees' motion, entering a summary final judgment finding that portion of the ordinance providing that "the maximum number of occupants to reside in the facility shall be compatible with the surrounding residential uses," unconstitutionally vague and adjudicating both section 7.3(9) of the zoning code and the special exception granted to Life Concepts, Inc. void. The order permitted Life Concepts, Inc. to construct the building pursuant to the permit previously issued, but prohibited it from occupying and operating the structure as a group home facility.
Our analysis must begin with the presumption that the ordinance is constitutional. Scullock v. State, 377 So.2d 682, 683 (Fla. 1979). Rules of construction require that the ordinance be interpreted, if possible, as constitutional. DeSisto College, *728 Inc. v. Town of Howey-In-The-Hills, 706 F. Supp. 1479 (M.D.Fla.), affirmed, 888 F.2d 766 (11th Cir.1989). Appellees focus on the use of the word "compatible" in section 7.3(9)(c)(1) of the Zoning Code of the City of Apopka which required Life Concepts to demonstrate that the maximum number of occupants of the proposed group home facility would be compatible with the surrounding residential uses. Appellees urge that the word "compatible," being undefined in the ordinance, is not sufficiently definite and certain to provide limits on the Board's discretion when determining the number of people who could be housed in a group home. This argument is without merit because the word "compatible" has a plain and ordinary meaning which can be readily understood by reference to a dictionary.[1]See Gardner v. Johnson, 451 So.2d 477 (Fla. 1984).
While it is true that the ordinance did not contain specific quantitative guidelines for the determination of the number of occupants of a group home, that level of specificity is neither required nor workable. The term "compatible with residential uses" provides the requisite standard and criteria for evaluating special exception applications for group home and foster care facilities while granting the discretion necessary to account for the demographic characteristics of the subject community. At the zoning board hearing the proponents of the special exception informed the panel that the occupants of the home would be wheelchair bound and thus would not generate the amount of traffic as would the same number of persons not similarly physically challenged. Had the ordinance provided a specific numerical cap on the occupancy of the home, the zoning board would have been prohibited from considering the actual impact of the proposed use. Contrary to the trial court's finding, the criteria of the ordinance is not "subject to whimsical or capricious application or unbridled discretion." The requirement that the maximum number of occupants be "compatible with the surrounding residential uses" restricts the zoning board's discretion to limiting the maximum number of occupants to the number who can coexist harmoniously in the neighborhood. The maximum number of occupants permissible in the neighborhood cannot be predetermined. While some discretion is permitted the board in setting the actual number in a specific situation, the discretion is not without constraint and the parameters of the ordinance provide a court with a reasonable basis for judicial review of the board's decision.
The criteria of section 7.3(9) are easily distinguishable from the provisions found unconstitutionally vague in Effie, Inc. v. City of Ocala, 438 So.2d 506 (Fla. 5th DCA 1983), pet. for review denied, 444 So.2d 416 (1984) cited by the trial court. In Effie, the ordinance required the city council to "take into account" specified factors and "all other pertinent factors that may arise." Effie challenged the provision because it failed to provide any standard upon which the city council could act and thus permitted the exercise of unbridled discretion by the council. This court found that the ordinance was unconstitutionally vague since it failed to inform the council of the weight to be given the listed factors and also permitted consideration of criteria not listed.
Accordingly, the summary final judgment of the trial court is reversed and the cause remanded with instructions to reinstate the special exception granted to Life Concepts, Inc. and lift the restriction previously entered prohibiting Life Concepts, Inc. from occupying the facility and operating it as a group home.
REVERSED and REMANDED with instructions.
DAUKSCH and GRIFFIN, JJ., concur.
NOTES
[1] The American Heritage Dictionary (2nd college ed. 1985) defines "compatible" as "Capable of living or performing in harmonious, agreeable, or congenial combination with another or others." The Random House Dictionary of the English Language 417 (2nd ed.  Unabridged 1987) similarly defines "compatible" as "1. capable of existing or living together in harmony ... 2. able to exist together with something else."