577 So.2d 593 (1991)
COLONIAL APARTMENTS, L.P., Etc., Petitioner,
v.
CITY OF DeLAND, Etc., Respondent.
No. 90-1377.
District Court of Appeal of Florida, Fifth District.
February 14, 1991.
Rehearing Denied April 8, 1991.
*594 Jason G. Reynolds of Coble, Barkin, Gordon, Morris & Reynolds, P.A., Daytona Beach, for petitioner.
Astrid de Parry, City Atty., DeLand, for respondent.
PETERSON, Judge.
Colonial Apartments, L.P., petitions for a writ of certiorari to review the circuit court's denial of a petition for a writ of certiorari filed in that court. The petition in the circuit court asked for relief from an administrative action by the City of DeLand in denying approval of a site plan submitted by petitioner. We grant the writ.
Petitioner sought to construct an apartment project on an approximately twenty-acre site in the City of DeLand. The site had been rezoned R-4 under section 33-8.1 of the DeLand Code of Ordinances at the time of its annexation into the city in 1972. The ordinance has remained substantially unchanged since the annexation.
Pertinent portions of the ordinance provide:
(A) Statement of intent. The intent of the R-4 dwelling district is to:
(1) Permit the construction of totally planned single-family cluster developments or duplexes, triplexes and low-density low-rise garden type apartments on relatively large tracts of land in single or common ownership;
(2) Require the preparation and approval of detailed site, landscape, traffic, parking and other plans deemed necessary as part of an overall development concept;
(3) Require a greater amount of open space and recreation area to building area; and
(4) Achieve an esthetic and compatible relationship between buildings, yards, patios, parking areas, common open space, recreation areas, and adjacent properties.
* * * * * *
(E) Dimensional requirements. The following requirements shall apply in the R-4 District:
(1) Minimum project site. A two-family or multi-family dwelling project site should be approximately one acre or more in area in order to accommodate at least two (2) or three (3) buildings, and in any case be sufficient in size to meet the requirements set out herein.
(2) Project density. The maximum allowable number of dwelling units shall not exceed sixteen (16) units per acre.
* * * * * *
(F) Building height. In order to encourage variety in the appearance of building roof lines and more usable or landscaped area, developers are permitted to design a portion of the multi-family dwelling project to a maximum height of three (3) stories or forty-five (45) feet provided the following conditions are met:
* * * * * *
(3) No three-story structures shall be located adjacent to a single-family residential area as shown on the zoning map or land use plan.
* * * * * *
(H) Screening. A minimum five-foot high screen shall be provided along side and rear lot lines that abut upon a single-family residential area as shown on the zoning map or land use plan but shall not be required in any front yard or along side lot lines abutting a street, park, stream, lake or golf course....
* * * * * *
(N) Architecture and environmental quality guidelines. In order to promote architectural and environmental quality within the project, the developer is encouraged to utilize the following guidelines in designing the project:
* * * * * *
(2) The architectural design of buildings should be developed with consideration *595 given to the relationship of existing adjacent development in terms of building height, mass, texture, line, and pattern.
Additionally, the ordinance provided in rather specific terms for setback requirements, spacing between buildings, number of stories and height requirements, minimum livable floor area in square feet, screening, parking requirements and design, vehicle access lanes, sidewalks, open space requirements, landscaping, signs, and architectural and environmental quality guidelines.
Petitioner attempted to comply with the requirements of the ordinance and submitted for approval a site plan that provided for a density of thirteen units per acre. The city's planning authorities recommended to the city commission that the plan be approved with certain changes not involving density; the petitioner agreed in writing to make the suggested changes. The city commission tabled action on the plan at the first consideration when adjoining landowners voiced opposition. Then, at a commission meeting on December 18, 1989, final action was taken that approved the plan with the single condition that the density not exceed six units per acre. The city directed a letter to petitioner on December 21, 1989, stating the reason for its action:
1. Based upon Section 33-8.1(A)(1), the proposed development did not meet the criteria of being "low-density low-rise garden type apartments on relatively large tracts of land"; and
2. Based upon Section 33-8.1(A)(4), the proposed development did not achieve an aesthetic and compatible relationship with the adjacent properties.
Petitioner then requested that the circuit court grant review of the action of the city commission and argued that the action had the practical effect of illegally down-zoning the site from sixteen to six units per acre. The city responded by arguing that the site had never been properly zoned R-4 when annexed because of non-compliance by the applicant and the city with notice and hearing requirements and/or a required sketch development plan. The city further argued that a planned development in the R-4 zoning district was more analogous to a special exception use than a rezoning, and that density was a proper consideration under the "statement of intent" portion of the ordinance that required an "aesthetic and compatible relationship" with adjacent properties.
The circuit court denied the petition in a sixteen-page opinion and order in which it discussed: (1) the illegality of the initial rezoning (nothing that it was not necessary to rule upon this issue since "all parties agreed that the R-4 zoning designation should be presumed valid"); (2) the inadequate level of city services and increase in traffic; (3) the fact that the site is surrounded on three sides by low density, single-family, residential and agricultural use and the fact that the closest existing multi-family development has a density of 4.25 to 4.5 units per acre; and (4) the generally accepted planning standard for low-density, multi-family developments of five to eight units per acre. The order concluded by holding that the city had discretion to condition site plan approval for a multi-family development in the R-4 zoning district on a reduction of project density, and that the city's determination was supported by substantial competent evidence that six dwelling units per acre would be more compatible with surrounding properties. The circuit court also commented that "[p]roject density is of legitimate concern to the City Commission in determining whether or not to approve a site plan for a multifamily development in the R-4 zoning district."
The appendices provided by the parties included copies of the legislative history of the annexation, including 1972 minutes and ordinances. That history reflected that the primary purpose of the city in annexing the site in 1972 was to promote the joint efforts of developers of lands in the general location of the site to construct a master sewer lift station and discourage installation of four to six individual small package treatment plants. Nothing in the 1972 records provides the slightest hint that density was a consideration except the statement *596 in ordinance number 72-34 that "the building of R-4 multiple family dwellings on the subject property would be consistent with the City's Comprehensive Use Plan, which plan has been approved by the Planning Board of the City of DeLand as well as the technical assistance of the Volusia Council of Governments...." The appendices contain neither copies of pertinent portions of the comprehensive plans nor minutes of the 1989 city commission meetings that would allow any insight into the substantial down-zoning of the site.
We view the issue that was presented to the circuit court as one of construction of the R-4 ordinance. While there may have been an additional issue initially on the validity of ordinance 72-34 that zoned the site R-4 and annexed it into the city limits of DeLand, that issue was removed from consideration by the circuit court through the stipulation of the parties.
The elected and appointed officials charged with the administration of city and county government are subjected to increasing pressures. On one hand, they are pressed to allow growth only if it is commensurate with available roads and services. On the other hand is the pressure from landowners who wish to develop their vacant properties in a manner that results in the largest return of capital or pleasure. Still another pressure is the desire of neighbors who do not wish their present enjoyment of their lands disrupted in the slightest by the use of adjoining vacant property. Opposition of surrounding property owners must be considered by the city in the instant case since the statement of intent of the R-4 ordinance includes the desire to achieve aesthetic and compatible relationships between adjacent properties. But the opinions of neighbors by themselves are insufficient to support a denial of a proposed development. BML Investments v. City of Casselberry, 476 So.2d 713 (Fla. 5th DCA 1985), rev. denied, 486 So.2d 595 (Fla. 1986); Conetta v. City of Sarasota, 400 So.2d 1051 (Fla. 2d DCA 1981).
General rules of statutory construction in zoning matters have evolved in past judicial attempts at interpretation and are appropriate in our review of the DeLand ordinance. Some of the basic rules were set forth in Rinker Materials Corporation v. City of North Miami, 286 So.2d 552 (Fla. 1973):
(a) In statutory construction, statutes must be given their plain and obvious meaning and it must be assumed that the legislative body knew the plain and ordinary meanings of the words.
* * * * * *
(c) Since zoning regulations are in derogation of private rights of ownership, words used in a zoning ordinance should be given their broadest meaning when there is no definition or clear intent to the contrary and the ordinance should be interpreted in favor of the property owner.
Id. at 553 (footnotes omitted). In Rinker, the supreme court also cited Rose v. Town of Hillsboro Beach, 216 So.2d 258 (Fla. 4th DCA 1968), for the rule that courts generally may not insert words or phrases in municipal ordinances in order to express intentions which do not appear, unless it is clear that the omission was inadvertent, and must give to an ordinance the plain and ordinary meaning of the words employed by the legislative body. Id. at 553.
This court followed another basic rule in City of Ormond Beach v. State ex rel. Del Marco, 426 So.2d 1029 (Fla. 5th DCA 1983), when we stated that the primary guide to statutory interpretation is the determination of legislative intent. It is only the interpretation of the statement of intent of the DeLand ordinance that causes the problem in the instant case, since the other portions of the ordinance are rather precise in directing the manner in which a parcel of land designated R-4 may be used. This statement of intent was used by the city to vary the rather straightforward pronouncement of the ordinance that limited the project density to sixteen units per acre. The record shows there was no evidence of intent before the trial court other than the language of the ordinance and the history of the annexation. The history seems to indicate that the city *597 induced the then-landowner to seek annexation in return for the R-4 zoning and availability of sewer facilities.
As to the language of the ordinance, we note the following:
1. The ordinance does not define the terms "low density" and "large tracts of land" as stated in section 33-8.1(A)(1). Some assistance in interpreting the term "low-density" can be gleaned, however, from several sections of the ordinance:
(a) Subsection (E)(1) provides that a multi-family dwelling project site ("multiple-family dwelling"), which includes a "garden apartment" pursuant to subsection (B)(3), should be approximately one acre or more in size to accommodate at least two or three buildings. Subsection (B)(2) describes a garden apartment as a group of two to eight owner- or renter-occupied dwelling units, but this number may be increased to twelve if approved by the planning board. This implies that each building can have eight units without the approval of the planning board. If eight units are allowed and at least two buildings are to be accommodated on approximately one acre, a simple calculation allows us to arrive at the maximum project density of sixteen units per acre. Whether sixteen units per acre are considered low, medium, or high density in other legislation is not clear or even material to this case, but in this ordinance, this number of units appears to fit the definition of a low-density, garden-type apartment.
(b) The ordinance contemplates that the R-4 zoning use would be placed adjacent to a single-family residential area indicating compatibility. Subsection (F)(3) prohibits three-story structures adjacent to a single-family residential area, and subsection (H) requires screening through the use of hedges and wood or masonry construction along side and rear lot lines abutting a single-family residential area. This recognition in the ordinance that R-4 and single-family districts can abut in the city's scheme of zoning undercuts the city's argument that the instant petitioner's attempt to gain approval of a site-plan showing thirteen units per acre is absurd when considering the surrounding properties. The city's own professional planning board did not seem to consider the site-plan absurd when it endorsed it with suggested changes not involving a density change.
The operative portions of the ordinance reviewed indicate that, for purposes of this ordinance, sixteen units per acre is within the term "low density" used in the statement of intent portion of the ordinance. Furthermore, nothing in the ordinance would lead one who examines the ordinance to suspect that the term "compatibility" as used in the statement of intent was meant to allow adjustment of the cap of sixteen units per acre prescribed in subsection (E).
The city relies in part on Life Concepts, Inc. v. Harden, 562 So.2d 726 (Fla. 5th DCA 1990), for its contention that the allowable density can be adjusted because the statement of intent requires that a project have a "compatible relationship" with adjacent properties. The City of Apopka ordinance under review in Life Concepts required that a use be "compatible with the surrounding residential uses." However, that ordinance is unlike the one in the instant case in that the phrase used in Apopka constituted a density restriction. The operative portion of the Apopka ordinance specifically provided that "[t]he maximum number of occupants to reside in the facility shall be compatible with the surrounding residential uses... ." Id. at 727. Moreover, unlike DeLand's ordinance, Apopka's ordinance never specified density at a certain number. We find most significant the comment in Life Concepts: "Had the ordinance provided a specific numerical cap on the occupancy of the home, the zoning board would have been prohibited from considering the actual impact of the proposed use." Life Concepts, at 728.
We agree with the city that project density is a legitimate concern and go further in stating that it is a most important concern. But it is a concern that must be addressed and expressed in appropriate ordinances. A community should be developed in accordance with planned action. Development decisions should not be *598 made in reaction to an application that relies on an ordinance establishing a density no longer acceptable to the majority of the current members of a governing body. Owners are entitled to fair play; the lands which may represent their life fortunes should not be subjected to ad hoc legislation. Density is one of the most important elements in the marketplace today in determining land value. When a law establishes a specific allowable density, its clear terms cannot be varied by a forced interpretation of intent. Such an ordinance should be interpreted in accordance with its plain meaning.
Our review of the circuit court's decision is limited to a determination of whether that court afforded procedural due process and applied the correct law. City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla. 1982). The correct law applicable in this case is that the ordinance should be given its plain meaning and that any doubts should be construed in favor of a property owner. The circuit court's reliance upon the undefined and uncertain standards contained in the statement of intent when clear and specific numbers of units are expressed in that same ordinance is not an interpretation that recognizes the plain meaning of the ordinance. It is not fair to the governed that the simple issue of how many dwelling units are allowed under this city ordinance requires a sixteen-page trial court opinion interpreting the ordinance against a clearly expressed number.
We grant the writ of certiorari, quash the order of the circuit court, and remand to the circuit court with directions to quash the administrative decision by the City of DeLand to impose a condition that the density of petitioner's development not exceed six dwelling units per acre.
Writ GRANTED; order QUASHED; REMANDED with directions.
W. SHARP and GOSHORN, JJ., concur.