**RECTORY PARK, L.C., a Florida limited liability corporation, et al., Plaintiffs,**

v.

**CITY OF DELRAY BEACH, a Florida municipal corporation, Defendant,**

and

**Block 77 Development Group, L.C., a Florida limited liability corporation, Intervening Defendant.**

No. 01–8569–Civ.

United States District Court, S.D. Florida.

May 7, 2002.

---

Charles L. Siemon, Todd George Messenger, Siemon & Larson, Boca Raton, FL, for Rectory Park, L.C., a Florida limited liability corporation, Sundy Estates

LC, Salero Properties, Inc., Naupilus Ltd., Agama Path Inc., plaintiffs.

John Fletcher Romano, Romano Eriksen & Cronin, West Palm Beach, FL, Charles L. Siemon, Todd George Messenger, Boca Raton, FL, for The Dharma Foundation III, a Florida nonprofit corporation, plaintiff.

Henry B. Handler, William John Cornwell, Weiss & Handler, Boca Raton, FL, Susan Adeen Ruby, Jay Toivo Jambeck, Delray Beach City Attorney's Office, Delray Beach, FL, for City of Delray Beach, Florida, a Florida municipal corporation, defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT AS TO COUNTS II AND III OF THE PLAINTIFFS' COMPLAINT

HURLEY, District Judge.

This case presents the question whether the City of Delray Beach's conditional use zoning ordinance contains sufficiently clear and definite standards to withstand a vagueness challenge. The court concludes it does and, therefore, will grant the City's motion for summary judgment.

### BACKGROUND

Plaintiffs Rectory Park, L.C., Sundy Estates, L.C., Salerno Properties, Inc., Naupilus, Ltd., Agama Path, Inc., and the Dharma Foundation, III, Inc. (the "property owners") own real property in the City of Delray Beach, adjacent to or within one block of the two properties that are the subject of this litigation. The defendant City of Delray Beach ("the City" or "Delray Beach") is a Florida municipal corporation. The defendant-in-intervention, Block 77 Development Group, L.C.

("the developers"), is the owner of the property that has been re-zoned.

The factual background to this case starts in 1984 when a citizens task force assembled to spur the redevelopment of Atlantic Avenue, a then-blighted east-west major artery which bisects Delray Beach. The task force issued a report about the issues facing the downtown area, such as the need for physical improvements, increased parking, and the need to amend zoning and land-use regulations to achieve these goals. In this regard, it recommended several zoning proposals geared toward stimulating residential development in the downtown area. Encouraging people to live in the downtown area was seen as a critical component in the overall goal of reinvigorating the downtown core. To this end, one proposal called for the creation of a new zoning category to facilitate assembling land and developing larger multi-use projects.

The city commission formed the Delray Beach Community Redevelopment Agency (the CRA) to carry the momentum forward and foster downtown redevelopment. It, in turn, designed a community redevelopment plan for the downtown area. Part of the plan called for the City to amend certain zoning regulations that were viewed as impediments to residential development in the downtown area. Thereafter, the commission enacted amendments allowing for densities of greater than thirty units per acre in the downtown area, provided that certain performance requirements were met.

One of the provisions in question, Section 4.4.13(I) of the City's zoning code, as amended, provides that, within a certain area of the central business district, "[T]he maximum permissible density of a particular project will be established through the

conditional use process, based upon the degree to which the development complies with the performance standards [subsequently set forth], the required findings of Section 2.4.5(E), and other applicable standards of the Comprehensive Plan and Land Development Regulations."

Block 77 is a parcel of land in the City's central business district. It is bounded on the north by Atlantic Avenue, on the east by Southeast Second Avenue, on the south by Southeast First Street, and on the west by Southeast First Avenue. It is zoned "central business district," which permits thirty units per acre residential density as-of-right. Block 69 is located immediately west of Block 77. It is contained within the City's Old School Square Historic Arts District ("historic district" or OSSHAD). It is bounded on the north by Atlantic Avenue, on the east by Southeast First Avenue, on the south by Southeast First Street, and on the west by South Swinton Avenue. Block 69 is zoned as a historic district.

The CRA targeted Block 77 for re-development. It solicited proposals for a mixed-use project, with appropriate parking facilities, and specified improvements to a nearby park. The developers (Block 77 Development Group) responded with a proposal, called the Worthing Place Project ("the project"), which contained a mixed-use residential and retail building of just under sixty feet in height. It included 219 residential units, 12,292 square feet of retail space and a 200–space parking garage which would be located adjacent to Block 77 on Block 69. To succeed, however, the project required conditional use approvals permitting density in excess of thirty units per acre and a height of up to sixty feet. Further, to allow construction of the proposed parking garage, a text amendment would be required to take six lots from Block 69, which is in the City's historic district, and permit them to be developed under standards applicable to the central business district.

The developers submitted their proposal to the City's historic preservation board, which issued a recommendation favoring the needed text amendment. In turn, the planning and zoning board, after considering the preservation board's recommendation, voted 4–1 to recommend approval of the text amendment to the city commission. Next, the planning and zoning board reviewed the developers' applications for conditional use for density above thirty units per acre and for height up to sixty feet. It approved those applications by a vote of 4–2 and 5–1, respectively.

The planning and zoning board documented its analysis in a report which was provided to the city commission. The city commission ultimately voted to grant a conditional use approval (the "development order") for the project. It authorized an increase in density from thirty dwelling units per acre to ninety-two units per acre, and an increase in height from forty-eight feet to sixty feet. The city commission also held a quasi-judicial hearing in which it adopted Ordinance No. 47–99, the "text amendment." This operated to re-zone the property where the garage was proposed to a hybrid central business district/historic district zone, in which the parking garage was a permitted use.

The plaintiff property owners object to the commission's action, contending that it crams six stories of apartments (219 units), up to 17,900 square feet of retail space, and 416 parking spaces onto an area of 2.38 acres. They assert the project will dominate the landscape of the western portion of downtown, and be "utterly gi-

gantic" in comparison to its neighbors in the historic district. Driven by these concerns, they filed this lawsuit seeking to have the City's conditional use ordinance declared void for vagueness.

### JURISDICTION

This court possesses removal jurisdiction pursuant to 28 U.S.C. § 1441 because the plaintiffs' complaint contains claims challenging a municipal ordinance under 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment.

### DISCUSSION

#### A. STANDARD OF REVIEW

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could find in his favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

"The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322. If the non-moving party fails to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then the court must enter summary judgment for the moving party. *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir.1998).

#### B. PLAINTIFFS' CLAIMS

The property owners' complaint sets forth three counts: (1) Count I—violation of the Due Process Clause of the Fourteenth Amendment (alleging Section 4.4.13(I) of the City's Land Development Regulations is unconstitutional as applied to the City's conditional use approval); (2) Count II—violation of the Due Process Clause of the Fourteenth Amendment (alleging Section 4.4.13(I) is vague in all its applications, and therefore facially unconstitutional); (3) Count III—violation of the Due Process Clause of the Fourteenth

Amendment (alleging that enactment or enforcement of an unconstitutional ordinance qualifies as a constitutional tort), brought pursuant to Section 1983.

In these counts, the property owners have asked the court enter a declaratory judgment that Section 4.4.13(I) of the City's development regulations is unconstitutional as applied and on its face, to enjoin the City from enforcing the provisions of that section to allow an increase in density for the developers' project, to declare that the City has violated the plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution, and award compensatory damages and attorneys' fees.

### 1. Standing

Whether the plaintiff property owners have standing to challenge the zoning ordinance or its application must be resolved prior to, and independent of, the merits of their claims. "Standing is the determination of whether a specific person is the proper party to bring a particular matter to a federal court for adjudication." Erwin Chemerinsky, FEDERAL JURISDICTION § 2.3.1 (2d ed.1994). The Supreme Court has identified three constitutional standing requirements. First, the plaintiff must allege that he has suffered or imminently will suffer an injury. Second, the plaintiff must allege that the injury is fairly traceable to the defendant's conduct. Third, the plaintiff must allege that a favorable federal court decision is likely to redress the injury. See Northeastern Fla. Chapter v. City of Jacksonville, Fla., 508 U.S. 656, 663–64, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The City argues that the plaintiffs lack standing because the City applied the ordinance only to a third party, i.e., the developers. The City contends that under constitutional jurisprudence, a litigant only has standing to vindicate his own constitutional rights, except in narrow cases involving facial challenges—and in particular cases involving First Amendment freedoms and other fundamental rights. See Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir.1998).

■ While citing correct principles, the City has taken too narrow and restrictive a view as to the class of persons affected by the application of the ordinance. The plaintiffs have alleged direct harm to themselves. Zoning ordinances serve in large part to protect property values by regulating land use by adjoining landowners. As such, the neighboring property owners are seeking to vindicate their own "right to be free of arbitrary or irrational zoning actions." Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 263, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

Scholarship in the area of zoning litigation supports the statement that neighboring landowners have standing to sue to contest administrative decisions on zoning regulations on a particular property.

The Standard State Enabling Act provides that "any person or persons, jointly or severally, aggrieved" by a board of adjustment decision (for example, denial of a variance) can appeal the decision in court. Most states have adopted this "person aggrieved" standard for standing to challenge an administrative zoning decision in court. The same "person aggrieved" standard applies even if no

administrative remedy was sought and the case originated in court.

While it is simple enough to state that a "person aggrieved" has standing to challenge zoning in court, the problem arises of determining who is a "person aggrieved." The exact contours of the definition, and thus, the determination of who has standing, have developed largely in state common law. Generally, two elements are required. The plaintiff must show some interest in land affected by the zoning and the plaintiff must allege specific pecuniary damage.

Douglas W. Kmiec, ZONING & PLANNING DESKBOOK § 7.8 (2d ed.2001).

According to Professor Kmiec, "surrounding property owners may also have a sufficient interest in the regulated property to have standing." He lists a number of state-court decisions supporting this proposition, including Exchange Investments v. Alachua County, 481 So.2d 1223 (Fla. 1st DCA 1985), where the First District Court of Appeal held that owners of property within one mile of an area re-zoned for a planned unit development had standing to challenge the county's reduction of the number of parking spaces required to permit the development. See also Steadham v. Board of Zoning Adjustment, 629 So.2d 647 (Ala.1993) (holding that neighbors had standing to challenge a use variance allowing a youth corps facility for nonviolent juveniles, on ground that board's action could have an adverse effect on property values).

Although the foregoing state-law decisions are not controlling on whether the property owners in this case have standing under Article III, these decisions are highly persuasive. See MHDC, 429 U.S. at 262 n. 8 ("State law of standing, however, does not govern such determinations in the federal courts."). Under the facts alleged in this case, the court concludes that the property owners have met federal constitutional standing requirements. By alleging that the City's approval of the conditional use applications will imminently harm their property values, the plaintiffs have sufficiently alleged injury to themselves, not merely to third parties. The fact that the city commission granted such petitions is sufficient to demonstrate that the injury is fairly traceable to the City's conduct. Finally, since plaintiffs have requested this court declare the City's actions to be void and unconstitutional, which would likely prevent the threatened injury, they have shown redressability.

The Supreme Court has also articulated a number of prudential standing requirements, one of which is that the plaintiff seeking standing must be within the "zone of interests" protected by the statute in question. See Clarke v. Securities Indus. Ass'n, 479 U.S. 388, 396, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987); Association of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153–54, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). It is unclear whether the zone of interests test is an additional standing requirement only in cases seeking review of decisions of federal administrative agencies pursuant to the Administrative Procedure Act. See Chemerinsky, supra, at § 2.3.6. In any case, this court finds as a matter of fact that the City's zoning ordinances were designed in part to protect the property values of all property within the regulated area. The plaintiffs are persons within the zone of interests sought to be protected by the ordinance. Therefore, this court concludes that the plaintiff property owners have standing to bring the challenge to the City's ordinance as it was applied in this case.

### 2. Facial Challenge

Section 4.4.13(I)(1) of the Code of Ordinances of the City of Delray Beach provides in pertinent part:

Residential development may exceed thirty units per acre as a conditional use only on property located south of N.E. 2nd Street and north of S.E. 2nd Street. The maximum permissible density of a particular project will be established through the conditional use process, based upon the degree to which the development complies with the performance standards of this section, the required findings of Section 2.4.5(E), and other applicable standards of the Comprehensive Plan and Land Development Regulations. Notwithstanding the above, the approving body may deny an application for increased density where it is determined that the proposed project is not compatible in terms of building mass and intensity of use with surrounding development.

Section 4.4.13(I)(2) lists eight performance standards that are supposed to be used to establish the permissible density of a particular project, to paraphrase: (1) variation in design to add interest to the elevations and relief from building mass, (2) a parking garage provides unified design elements with the main building through the use of similar building materials and color, vertical and horizontal elements, and architectural style, (3) a number of different unit types, sizes and floor plans are available within the development, (4) the interiors of the dwelling units provide unique features and conveniences that distinguish them from standard multi-family projects and create an attractive living environment, (5) the development provides common areas and/or amenities for residents such as swimming pools, exercise rooms, storage rooms or lockers, covered parking, gardens, courtyards, etc., (6) the development promotes pedestrian movements by providing convenient access from the residential units to the public sidewalk system, (7) the development provides opportunities to share parking, accessways, driveways, etc., with adjoining properties, or provides additional parking spaces that may be used by the public, and (8) projects fronting on Atlantic Avenue, N.E. 1st Street, or S.E. 1st Street contain nonresidential uses on the ground floor.

Plaintiffs contend that the proposed project is not compatible in terms of building mass and intensity of use with the surrounding development. They assert that none of the generally accepted measures that planners use to evaluate compatibility in terms of mass and intensity of use were applied in the City's analysis of the project. Therefore, the plaintiffs argue, the City's failure to deny the application for increased density based on the last sentence of Section 4.4.13(I)(1) was either an arbitrary or capricious act, or the result of the application of an unconstitutionally vague ordinance under the circumstances of this case. Moreover, the property owners contend that the developers' project does not substantially meet any of the relevant performance standards. Finally, they argue that the performance standards are so vague that the city commission has virtually unbridled discretion. To pass constitutional muster, they say, zoning performance standards must be sufficiently clear and definite to fetter the decision maker.

The City has responded and moved for summary judgment on the grounds that: (1) the facial challenge to the City's performance standards must fail because the standards are not vague in all of their

applications; (2) the City's performance standards contain sufficient criteria to fetter the discretion of the city commission, and those criteria were fastidiously applied in this case; and (3) since the vagueness claims must fail, the Section 1983 claim which is predicated on the other claims must fail. The City asserts that the issues raised in the plaintiffs' complaint are exclusively matters of law that can be determined by this court in a motion for summary judgment. Plaintiffs agree that Count II is a question of law that can be resolved by the Court, and have filed a cross-motion for summary judgment as to Counts II and III.

■ The City begins its defense with the assertion that the property owners cannot demonstrate that the ordinance is facially invalid—that is, it is unconstitutional in all its possible applications—and therefore summary judgment should be entered in its favor. "A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself." *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir.2000). The general rule is that for a facial challenge to a legislative enactment to succeed, "the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). *See also Frandsen*, 212 F.3d at 1235 (stating that "no set of circumstances" is the general rule for evaluating facial challenges in the Eleventh Circuit). "The fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid...." *Salerno*, 481 U.S. at 745. This heavy burden makes such an attack "the most difficult challenge to mount successfully against an enactment." *Id.*

■ Interpretation of a statute or ordinance is a question of law and therefore may be determined by the court on a motion for summary judgment. *See United States v. Prosperi*, 201 F.3d 1335, 1342 (11th Cir.2000); *Devin v. Hollywood*, 351 So.2d 1022, 1026 (Fla. 4th DCA 1976). In doing so, the court must consider the City's own authoritative construction of the definition of its performance standards. *See Southlake Property Assoc., Ltd. v. City of Morrow*, 112 F.3d 1114, 1118 (11th Cir.1997). A court must defer to a local government's interpretation of its ordinances as long as the interpretation is "based upon a permissible construction of the ordinance." *Id.*

■ The property owners claim that Section 4.413(I)'s performance standards are impermissibly vague and indefinite, and that the ordinance fails to fetter the discretion of the city commission, allowing the commission to base its decisions on "arbitrary, discriminatory, or capricious considerations." "Vagueness arises when a statute is so unclear as to what conduct is applicable that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *United States v. Gilbert*, 130 F.3d 1458, 1462 (11th Cir.1997). "When addressing a facial challenge to a law on vagueness grounds, 'a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.'" *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1429 (11th Cir.1998) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)).

■ As an initial matter, the court finds that Section 4.4.13(I) does not implicate a substantial amount of constitutionally-pro-

tected conduct, such as speech or expression protected under the First Amendment, or other fundamental rights under the Fourteenth Amendment's Due Process Clause, such as those related to family, marriage, procreation or child-rearing. *See Bowers v. Hardwick,* 478 U.S. 186, 191, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). The United States Supreme Court has stated that where a statute does not infringe on such protected conduct, a void-for-vagueness challenge is more difficult to sustain because "[t]he degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." *Hoffman Estates,* 455 U.S. at 498. "Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id.* Moreover, courts apply a less rigorous vagueness inquiry to statutes that impose civil monetary fines rather than criminal penalties as a means of enforcement. *See id.* at 498–99. So while the plaintiffs can claim that the subject ordinance violates due process because it is unduly vague, since the ordinance involves purely economic regulation and does not implicate substantial constitutionally-protected conduct, the court will examine it with somewhat less exacting scrutiny.

Applying these principles, the court finds that the property owners have failed to meet their burden to demonstrate that the ordinance is impermissibly vague in all of its applications. As the Eleventh Circuit has noted, "[W]e apply the void-for-vagueness doctrine outside of the First Amendment context only rarely." *American Iron & Steel Inst. v. OSHA,* 182 F.3d 1261, 1277 (11th Cir.1999). The applicable performance standards, listed as Section 4.4.13(I)(2)(a)–(h), are sufficiently clear for persons of common or ordinary intelligence to understand their meaning. Moreover, they are sufficiently definite in providing detailed performance standards. While the ordinance does not require a project meet any particular one of the performance standards, the clear import of the section as a whole is that the more a project meets each of the standards, the greater will be the amount of increased density granted. In addition, "[t]he void-for-vagueness doctrine typically applies where a statute prohibits conduct without clearly defining that conduct." *Id.* (citing *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)). The language of the performance standards does not prohibit activity, but rather illustrates factors that may lead to an increase in density. Therefore, a central danger sought to be prevented by the vagueness doctrine is not present in this case.

The property owners' concern, however, does not hinge so much on the idea that the words in the ordinance themselves are vague (which tends to be the issue in traditional void-for-vagueness inquiries) as much as their uneasiness that the ordinance does not constrain the discretion of the decision-maker. They have proffered a number of Florida cases wherein the courts have held certain ordinances unconstitutional because they lacked objective criteria. *See, e.g., Miami–Dade County v. Omnipoint Holdings, Inc.,* 811 So.2d 767, 769 (Fla.3d DCA 2002) (holding that provision of Miami–Dade County Code on unusual uses was legally deficient because it lacked objective criteria for the County's zoning boards to use in their decision-making process); *City of Miami v. Save*

*Brickell Avenue, Inc.*, 426 So.2d 1100, 1104 (Fla.3d DCA 1983) ("[I]f definite standards are not included in the ordinance, it must be deemed unconstitutional as an invalid delegation of legislative power to an administrative board.").[1] The City counters with additional Florida case law wherein the courts have upheld certain ordinances containing language allowing a city commission to grant or deny a use based on a malleable consideration such as "compatibility with the surrounding area." *See Nostimo, Inc. v. City of Clearwater*, 594 So.2d 779, 781 (Fla.2d DCA 1992); *Life Concepts, Inc. v. Harden*, 562 So.2d 726 (Fla.5th DCA 1990).

As indicated, however, this court's responsibility is to determine, in light of the standard for review of economic regulation, whether Section 4.4.13(I) is so vague or vests unbridled discretion in the city commission to such a degree that it imperils due process. "To find a civil statute void for vagueness, the statute must be 'so vague and indefinite as really to be no rule or standard at all.'" *Seniors Civil Liberties Ass'n, Inc. v. Kemp*, 965 F.2d 1030, 1036 (11th Cir.1992) (quoting *Boutilier v. INS*, 387 U.S. 118, 123, 87 S.Ct. 1563, 18 L.Ed.2d 661 (1967)).

Upon consideration of the ordinance and the applicable law, this court finds that Section 4.4.13(I)'s language contains sufficiently clear and definite standards to pass constitutional muster. *See also Save Brickell Avenue*, 426 So.2d at 1104. The ordinance's requirement that "[t]hese standards *shall* apply to all applications" (emphasis added) clearly establishes the mandatory nature of the performance standards. The degree to which a particular project may exceed 30 units per acre is not left to the City's unrestrained discretion, but rather the ordinance sets forth that the density "*will be established* ... based upon the degree to which the development complies with the performance standards of this section, the required findings of Section 2.4.5(E), and other applicable standards of the Comprehensive Plan and Land Development Regulations." (emphasis added).

■ The court now proceeds to examine other portions of the challenged ordinance, and finds them to pass constitutional muster as well. Section 4.4.13(I)(1)'s express incorporation of the City's Comprehensive Plan and Land Development regulations is not in any sense a "fatal flaw," as the sentence simply notes that the proposal must comply with other relevant regulations. Courts have explicitly approved of such incorporating language. *See, e.g., DeSisto College, Inc. v. Town of Howey-in-the Hills*, 706 F.Supp. 1479, 1497 (M.D.Fla. 1989); *Alachua County v. Eagle's Nest Farms, Inc.*, 473 So.2d 257, 261 (Fla.1st DCA 1985).

■ Furthermore, the "escape clause" in Section 4.4.13(I)(1) is not inherently problematic from a constitutional perspective.

1. See also *Pinellas County v. Jasmine Plaza, Inc.*, 334 So.2d 639, 640 (Fla.2d DCA 1976) (finding that ordinance stating standards to be applied by county administrator in deciding whether to approve issuance of a tree permit was "overly broad, imprecise and too loose"); *North Bay Village v. Blackwell*, 88 So.2d 524, 526 (Fla.1956) (holding invalid a municipal zoning ordinance which reserved to village council the authority, without providing standard for guidance and control, to approve location of an automobile service station); *Drexel v. City of Miami Beach*, 64 So.2d 317, 319 (Fla.1953) (invalidating ordinance regulating construction of multi-level parking garages because it failed to prescribe rules and conditions for guidance of authorities).

The clause states that "Notwithstanding the above, the approving body may deny an application for increased density where it is determined that the proposed project is not compatible in terms of building mass and intensity of use with surrounding development." This sentence simply makes clear that notwithstanding an applicant's compliance with many of the performance standards, the city commission possesses discretion to deny an application for increased density if it finds that the project is "not compatible" with the surrounding buildings in terms of building mass and intensity of use. Again, in land-use regulation the decision-maker is permitted to exercise some discretion where the matter concerns a concept as inherently subjective as "compatibility." *See Nostimo*, 594 So.2d at 781 (stating that portion of city code permitting conditional use approval only if use was "compatible" with surrounding area was not facially unconstitutional). Moreover, the ordinance limits the inquiry on "compatibility" to consideration of "building mass and intensity of use."

For the forgoing reasons, this court holds that the plaintiff property owners have failed to demonstrate that the ordinance is unconstitutionally void-for-vagueness. It cannot be said that under "no set of circumstances" could the statute be constitutionally applied, or that persons of ordinary intelligence cannot understand the ordinance's meaning. Nor can it be said that the ordinance lacks sufficiently definite standards to guide the decision-maker. Therefore, this court will enter summary judgment in favor of the City as to Count II of the plaintiffs' complaint.

### 3. "As Applied" Challenge

■ The City contends that there is no genuine issue of material fact that the city commission's approval of the conditional use for the developers' project was a permissible application of Section 4.4.13(I). The property owners have countered that the evaluation of Count I requires some judicial inquiry into the facts of how the ordinance was passed, what analysis was undertaken, etc. This court, however, takes a more narrow view as to the scope of the inquiry. From a constitutional perspective, as long as the City made adequate findings of fact that the project met one or more of the standards, the approval of the conditional use does not violate federal due process. Upon review of the record, the court concludes there is no genuine issue of material fact that the city commission complied with the ordinance's requirements and adequately considered whether the proposal met the various performance standards.

■ In this case, the developers were required to demonstrate to the City's professional planning staff and to the city commission that the density sought was justified based on the degree to which the proposal complied with the performance standards. Diane Dominguez, a former director of the City's planning and zoning board, testified that members of the City planning staff met with the developers' representatives over the course of several months to negotiate changes to the proposal so that the final proposal would meet the performance standards. The planning staff thereafter prepared a report analyzing the proposal and the extent to which it complied with the eight performance standards. The staff report was then made a part of the record to be considered by the city commission at the January 4, 2000

quasi-judicial hearing.[2] These facts are undisputed.

At the January 4 hearing, the commissioners received extensive oral and written testimony from experts on the city staff stating that the proposed project met the City's performance standards, and that the proposed increased density to ninety-two units per acre was warranted. The commissioners also heard testimony from experts retained by the developers regarding the proposal's compliance with the performance standards. The commission also opened the floor to local residents, merchants, property owners, and other interested parties to speak in favor of or against the proposal. There is no allegation that the plaintiffs or others opposed to the project were denied the opportunity to present their arguments to the commission. The uncontested evidence before the court establishes that the city commission based its decision following a deliberate, reasoned process wherein all interested parties could express their views.

Plaintiffs have charged that there is no record of any sort of proportionality analysis having been performed by the planning board or the city commission. But the ordinance simply requires the commission to consider the extent to which the proposal meets the performance standards. The ordinance does not require a documented, on-the-record analysis of the number of units of increased density granted corresponding to each of the proposal's features that purportedly complied with the performance standards. This court finds that any lack of a documented analysis was not a violation of procedural due process. Accordingly, this court will enter summary judgment in favor of the City with respect to Count I—the "as applied" constitutional challenge.

#### 4. Section 1983 Claim

The City argues that if this court enters summary judgment against the plaintiffs with respect to both the facial and as-applied constitutional challenges to the ordinance, then it is also proper to enter judgment against the plaintiffs with respect to Count III—the claim that the City's enactment or application of the subject ordinance violated the Due Process Clause of the Fourteenth Amendment and amounted to a constitutional tort.

■■■ Since this court has held that Section 4.4.13(I) is neither facially unconstitutional nor unconstitutional as applied in this case, summary judgment in favor of the City is appropriate on this count because the plaintiffs cannot demonstrate that a constitutional tort was committed. Moreover, to the extent plaintiffs seek damages under Section 1983 against the city commission for merely *voting* for an ordinance, such a claim would be barred because "[l]ocal legislative bodies enjoy absolute immunity when exercising functions in the sphere of legitimate legislative activity." *Macuba v. Deboer*, 193 F.3d 1316,

---

**2.** Plaintiffs have argued that the transcript of the January 4, 2000 hearing before the city commission and the planning and zoning board's staff report constitute inadmissible hearsay under Fed.R.Evid. 802 insofar as they are submitted for the truth of the matters asserted therein. However, the transcript is relevant evidence because it tends to establish what the city commission considered during the hearing. No party has argued that the transcript does not accurately reflect what was stated at the hearing. As to the staff report, Ms. Dominguez's affidavit swearing as to the report's authenticity provides a sufficient basis to admit the staff report as evidence of what was placed in the record for the commission's consideration.

1320 (11th Cir.1999) (internal quotations omitted).

### 5. Plaintiffs' Cross–Motion for Summary Judgment

Plaintiff property owners filed a cross-motion for summary judgment in their favor on Counts II (facial challenge) and III (constitutional tort—violation of Due Process Clause). Their arguments are essentially the same as those presented in opposition to the City's motion. Having considered the arguments, this court will deny the plaintiffs' cross-motion based on the rationale stated above.

### CONCLUSION

This case involves important issues regarding the deference to be afforded to a municipality in its effort to revitalize its downtown core through the use of a flexible mixed-use zoning policy. In this context, the deference is substantial. Federal courts are mindful that matters of land-use planning are primarily of local concern. *See Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959). The "routine application of zoning regulations ... is distinctly a feature of local government." *Hill v. City of El Paso,* 437 F.2d 352, 357 (5th Cir.1971). When a zoning regulation, such as the mixed-use policy in question here, contains clear and definite standards, it will not be declared impermissibly vague just because the decision-maker has flexibility in applying the standards.

Accordingly, for the reasons set forth, the court holds that Section 4.4.13(I) is constitutional both on its face and as applied in this case. Therefore,

It is hereby **ORDERED** and **ADJUDGED** that

(1) The City of Delray Beach's motion for summary judgment [DE # 22] is **GRANTED.**

(2) The Plaintiffs' cross-motion for summary judgment [DE # 42] is **DENIED.**