841 So.2d 507 (2003)
CAP'S-ON-THE-WATER, INC., et al., Appellants,
v.
ST. JOHNS COUNTY, et al., Appellees.
No. 5D02-988.
District Court of Appeal of Florida, Fifth District.
February 21, 2003.
Rehearing Denied April 7, 2003.
Frank D. Upchurch, III, of Upchurch, Bailey and Upchurch, P.A., St. Augustine, for Appellants.
Isabelle Christine Lopez, Assistant County Attorney, St. Johns County, St. Augustine, for Appellee, St. Johns County.
Robert L. McLeod, II, St. Augustine, for Appellees, Morsch, et al.
PLEUS, J.
The appellants own a restaurant/bar on the Intracoastal Waterway ("the owners"). The sole issue on appeal is the facial constitutionality of a portion of the St. Johns County Land Development Code (the "Code"). Because we find the ordinance, on its face, does provide for "adequate" standards to be applied by the zoning authorities in making zoning decisions, we affirm the trial court's order upholding the constitutionality of the ordinance.
The portion of the ordinance in question pertains to the conditional granting *508 of Special Uses under the Code. Specifically, section 2.03.01-A, entitled "Limitations on Special Uses," provides:
The Planning and Zoning Agency may adopt conditions on any Special Use approval; any such conditions shall be stated in the final order of the Planning and Zoning Agency granting the Special Use.
The ordinance places no limits on the discretion of the Planning and Zoning Agency (the "PZA") to adopt conditions for the special use approval. Read alone, this provision would not pass constitutional muster because the PZA could arbitrarily impose on any applicant any condition that it chose to impose.
In ABC Liquors, Inc. v. City of Ocala, 366 So.2d 146 (Fla. 1st DCA), cert. denied, 376 So.2d 69 (Fla.1979), an ordinance simply allowing a mayor and city council to decide on a case-by-case basis those locations at which the sale of alcoholic beverages would be permitted, and which would not be permitted, was held to be unconstitutional based on the total absence of standards or procedures for guidance in the decision-making process.
Although the ordinance in the instant case does not provide for standards in the decision-making process, it, like any code provision, must be read in the context of the entire document. The County points to the definition of a special use found in Part 12.01.01 of the Code which provides guidance as to when a conditional special use may be found to be appropriate. This code section provides:
Part 12.01.01
Special Use: Means a Use that would not be appropriate generally or without restriction throughout a zoning division or district but which if controlled as to number, area, location, or in relation to the neighborhood, would promote the public health, safety, welfare, morals, order, comfort, convenience, appearance, prosperity, or the general welfare. Such Uses may be permissible in a zoning classification or district upon the granting of a Special Use and meeting the requirements of this Code.
(Emphasis added).
The trial court concluded that section 2.03.01-A is constitutional because the discretion to place conditions on a special use is curtailed by the Code's definition of a special use in Part 12. The court noted that similar terminology limiting a zoning entity's discretion was deemed constitutional in Life Concepts, Inc. v. Harden, 562 So.2d 726 (Fla. 5th DCA 1990).
In Life Concepts, neighbors of a proposed group house challenged the constitutionality of a city ordinance allowing group or foster homes as special exceptions. This court found that the ordinance in question which required group homes to be "compatible with the neighborhood or area in terms of size of facility and number of persons," to not be "subject to whimsical or capricious application or unbridled discretion." Life Concepts, 562 So.2d 726, 727-28.
The language in the definition of a special use in the instant case that the use should be controlled "in relation to the neighborhood," is quite similar to the language held sufficient in Life Concepts. We thus conclude that the language "in relation to the neighborhood" provides a sufficient constitutional standard on the PZA's discretion to impose conditions on a special use in any particular application.
We note, however, that in the application of this provision, the conditions imposed must bear a relationship to the goal of compatibility between the special use and the surrounding area. Should the owners decide to challenge the conditions *509 as unreasonable restrictions, the court can consider whether the conditions are whimsical or capricious. Conditions on a use, just like exceptions to a rule, can swallow or drown the use which was intended to be approved in the first place. Owners are entitled to fair play; their properties, which may represent their life fortunes, should not be subjected to whimsical or capricious conditions.
AFFIRMED.
PALMER, J., concurs.
PETERSON, J., dissents with opinion.
PETERSON, J., dissenting.
I respectfully dissent. I do not understand how Part 12.01.01, the portion of the Code defining special use, supplies any meaning or restrictions on the type or extent of the conditions that may be imposed on the owner of lands by the members of the planning and zoning agency of St. Johns County pursuant to Part 2.03.01-A.
The appellant is the owner of a restaurant established in 1981 on the intracoastal waterway in the Vilano Beach area of St. Johns County. The property is zoned commercial highway tourist. The facility has two dining rooms, a small lounge and a waterfront deck where food and beverage service is provided. A live band sometimes plays on this deck and I suspect that the noise disturbs the neighbors and is the source of a legitimate problem and has stimulated this litigation.
In 1983 the county granted the facility a zoning exception for on-site consumption of alcoholic beverages. Sometime before June, 1999, the facility was sold and the county "decided" that the exception was not transferable to the new owners and that an application for a special use permit was required.[1] Fearing retaliation by county officials if they did not comply with the requirement for a new application, they submitted an application. Subsequently, the county imposed new conditions on the operation of the facility:
1. Package sales of alcohol would no longer be allowed;
2. Live bands would have to perform in a bandshell to be constructed;
3. Live bands would only perform in the bandshell (a) between 1:00 and 5:00 P.M. on Sundays, (b) at catered weddings and parties on Friday and Saturday nights no later than 6:00 P.M. and (c) on New Years Eve; and
4. String acoustical performers would only be allowed to perform in the bandshell on Fridays and Saturdays from 6:00 to 9:00 P.M.
When neighbors appealed the decision to grant the permit, the new owners proposed enclosing a room where a band could play. This proposal was incorporated in the permit with other modifications and the county issued the permit.
Unfortunately, loud speakers providing background music were used on the deck, neighbors complained and a county official visited the facility when a live band was playing in the newly enclosed room. The officials notified the owners that they were in violation of the permit because the room had not been constructed in accordance with the permit. Apparently the new owners complied with the notice over objections, *510 but then attacked Part 2.03.00 of the Code in the circuit court alleging that it authorizes the county to impose permit conditions on a selective, ad hoc, arbitrary basis, without reference to uniform standards, criteria and requirements. A final judgment was rendered against the new owners and is the subject of this appeal.
I must admit that most of the conditions imposed upon the new owners by St. Johns County in its attempt to resolve problems that existed between adjoining land owners were reasonable and practical. In this case, the county used restraint in imposing most of the conditions that were aimed at solving the problems between adjoining land owners, but in doing so removed a source of revenue for the sale of package goods that had nothing to do with the noise problem. Notwithstanding, I am concerned with the non-existence of any limitation in the Code that would have prevented the county from imposing any imaginable condition and agree with the appellant that the Code can permit conditions to be imposed on a selective, ad hoc, arbitrary basis. The Code does not supply any uniform standards, criteria or requirements that would allow an applicant to anticipate what conditions the county may impose, nor does the Code place a restraint on county officials from imposing whatever conditions may come to mind.
If noise is the underlying issue in this case, the issue should be resolved through an action in nuisance or by an anti-noise ordinance, not the extreme measure of requiring a new application for a special use permit under the guise that an application is required simply because a long established business changes ownership when there has been no change in the type of operation.
NOTES
[1] Appellant has not raised an issue regarding the legality of the county's requirement that a new application be filed simply because a new owner exists. Notwithstanding, it should be noted that requiring a new application for a special use permit each time an established business is conveyed to a new owner has a chilling effect on property values where the operations of the business under new ownership may have conditions imposed by county officials without restraint.